THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto (Ariz. Bar No. 022349)
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com
hamel@the-plf.com

*Firm email for docketing purposes:*
admin@the-plf.com

*Attorneys for Plaintiff Barbara Robinson*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara Robinson, a resident of the State of California,<br><br>Plaintiff,<br><br>v.<br><br>Xanterra South Rim, L.L.C., a Colorado limited liability company,<br><br>Defendants. | Case No.<br><br><br>**COMPLAINT** |

For her Complaint against Defendant Xanterra South Rim, L.L.C., Plaintiff Barbara Robinson, through undersigned counsel, hereby alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Barbara Robinson is an 82-year-old woman residing in Humboldt County, California.

2. Upon information and belief, Defendant Xanterra South Rim, L.L.C. ("Xanterra") is a Colorado limited liability company authorized to do business and doing business in the State of Arizona.

3. Jurisdiction is founded upon 28 U.S.C. § 1332 in that the parties are domiciled in different states and the amount in controversy exceeds $75,000.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) insofar as all or a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred in the State of Arizona.

## GENERAL ALLEGATIONS

### Xanterra's Equine Operation

5. Upon information and belief, Xanterra is a private contractor that operates a stable and equine operation in the Grand Canyon pursuant to a concession with the National Park Service.

6. Xanterra holds its equine operation open to the public, offering several types of experiences for guests to explore the Grand Canyon.

7. Among Xanterra's offerings is a two-day, overnight mule trip to the canyon floor: Participants leave the South Rim of the Grand Canyon and descend on mule-back; spend a night in Phantom Ranch; and ascend on muleback the following morning.

8. For some time Plaintiff Barbara Robinson and her daughter, Debbie Cook, were attempting to schedule an overnight mule trip but had been unable to do so due to Xanterra's mules being sick.

9. Ms. Robinson and Ms. Cook were eventually provided the opportunity to participate in an overnight ride beginning April 21, 2019 and concluding April 22, 2019 (the "Mule Trip").

### The Mule Trip

10. On the evening of April 20, 2019, Ms. Robinson and Ms. Cook stayed at a hotel near the departure point for the Mule Trip and were provided a release to complete and sign; they did so.

11. Early in the morning on April 21, 2019, Ms. Robinson and Ms. Cook checked in for the Mule Trip, which was scheduled to leave at 6:45.

12. Prior to leaving, Ms. Robinson and other participants were assigned mules by a Xanterra employee.

13. The Xanterra employee assigned Ms. Robinson a mule named "Colton."

14. The group approximately 8-10 participants and two guides then left the South Rim and began their descent into the Canyon.

15. During the descent into the Canyon, one guide rode in front of the group and the other rode in the back.

16. The descent was uneventful, and Ms. Robinson and the entire party made it to the bottom of the Canyon that night.

### The Incident

17. The next morning, the party woke up early and began the trek out of the Canyon.

18. Approximately ¾ of the way up the Canyon, Colter began acting erratically and threw Ms. Robinson off his back onto the ground.

19. Though she was in immediate pain, Ms. Robinson attempted to make it out of the Canyon, agreeing to ride another mule.

20. Not long thereafter, Ms. Robinson informed the guides that the pain was too great and they called a medical helicopter to remove her from the Canyon.

21. Ms. Robinson was transported to Flagstaff Medical Center where she was diagnosed with a displaced fracture of her left T12 rib; nondisplaced posterior fractures of her right T10-T12 vertebrae, a burst fracture of her T12 vertebrae, and a transverse process fracture of her L1 vertebrae, among other injuries.

### **FIRST CLAIM FOR RELIEF**
### **(Negligence)**

22. Ms. Robinson incorporates the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

23. Xanterra is an operator of an "equine facility" within the meaning of A.R.S. § 12-553.

24. Xanterra owed a duty to Ms. Robinson to act as a reasonable equine facility under all of the circumstances presented.

25. Xanterra breached this standard of care when, among other things, it (1) failed to install suitable tack or equipment; (2) failed to assign Ms. Robinson a suitable animal; (3) failed to employ reasonable measures on the ride to keep participants safe; and (4) failed to reasonably screen, hire, train, and supervise its guides properly install suitable tack and other equipment.

26. As a direct and proximate result of Xanterra's breaches of the standard of care, Ms. Robinson was injured and suffered damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (Gross Negligence)

27. Ms. Robinson incorporates the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

28. Based on Colter's actions, it is believed that Xanterra was a young mule who was either new to Xanterra, was not properly trained, or was afflicted with a dangerous temperament.

29. A reasonable equine operator in Xanterra's position would have known of information concerning Colter's experience, history, training, and temperament.

30. A reasonable equine operator in Xanterra's position would know that placing an 81-year-old woman (regardless of her activity level) on such an animal for a two-day ride into the Grand Canyon would create an unreasonable risk of harm to her.

31. A reasonable equine operator in Xanterra's position would know that, by assigning her a mule like Colter – combined with the sum of Xanterra's other acts and omissions, including its organization and administration of the ride and hiring and

supervision of guides – the risk of harm to Ms. Robinson was so great that it was highly probable that harm would result.

32. Xanterra's assignment of Colter to Ms. Robinson constituted willful or wanton conduct that was recklessly indifferent to Ms. Robinson's safety.

33. As a direct and proximate result of Xanterra's actions Ms. Robinson was injured and suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Barbara Robinson hereby requests that the Court enter judgment against Defendant Xanterra South Rim, L.L.C. as follows:

A. For special damages, including but not limited to Ms. Robinson's medical bills, unexpected travel expenses, and out-of-pocket expenditures related to her injuries and treatment for them;

B. For general damages, including but not limited to Ms. Robinson's pain, suffering, emotional and psychological anguish, and loss of enjoyment of life;

C. For prejudgment interest on all liquidated sums;

D. For Ms. Robinson's reasonable attorney's fees and costs incurred in this action to the extent permitted by law; and

E. For such other relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38, Fed. R. Civ. P., and the Seventh Amendment to the United States Constitution, Plaintiff respectfully requests a jury trial in this matter.

DATED this 18th day of April, 2021.

THE PEOPLE'S LAW FIRM
645 North 4th Avenue, Suite A
Phoenix, Arizona  85003

By: /s/ Stephen D. Benedetto
Stephen D. Benedetto